UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 7:12-08-ART-HAI-2,3 |
| | ) | |
| v. | ) | |
| | ) | |
| BEVERLY LOCKHART & THAD RAY | ) | **ORDER AND RECOMMENDED** |
| MANNING, | ) | **DISPOSITION** |
| | ) | |
| Defendants. | ) | |
| | ) | |

*** *** *** ***

On September 13, 2012, Defendant Thad Ray Manning filed a Motion to Dismiss Indictment for Failure to Allege Essential Elements and Motion to Dismiss Based on Multiplicity. D.E. 39. On September 28, 2012, Defendant Beverly Lockhart filed a Motion to Dismiss the Superseding Indictment. D.E. 58. Defendant Manning also filed a Motion for a Bill of Particulars. D.E. 38. The Court set appropriate response/reply times, and all motions have been fully briefed. Thus, the motions are now ripe for the Court's review.

For the reasons set forth herein, the Court recommends that the District Court grant, in part, and deny, in part, Defendant Manning's Motion to Dismiss the Indictment (D.E. 39).[1] The Court also recommends that the District Court grant, in part, and deny, in part, Defendant Lockhart's Motion to Dismiss the Superseding Indictment (D.E. 58). Finally, assuming the Indictment is sufficient as to all Counts, the Court denies Manning's Motion for a Bill of Particulars (D.E. 38).

---

[1] Throughout his Motion, Manning simply refers to "the Indictment." *See* D.E. 39. The Court assumes he means the Superseding Indictment (D.E. 8), as this is the operative charging document in this matter, and the term "Indictment" will be used throughout herein to refer to the "Superseding Indictment."

## I.    BACKGROUND

On August 1, 2012, a federal Grand Jury returned a three-count Indictment against James Ronald Huffman, Beverly Lockhart, and Thad Ray Manning.  D.E. 1.  The Indictment charged Huffman, Lockhart, and Manning with conspiring to knowingly sell, purchase, or trade prescription drug samples in Counts I and II.  *Id.*  Count III charged Manning with making false statements to the Federal Bureau of Investigation.  *Id.*  Then, on August 15, 2012, the Grand Jury returned a seven-count Superseding Indictment.  D.E. 8.  Although Counts I through III remained unchanged from the original Indictment, Huffman and Lockhart were named in four additional counts.  *Id.*  Counts IV and V charge Huffman and Lockhart with conspiring to execute a scheme to defraud Medicare and other health care benefit programs in violation of 18 U.S.C. § 1349.  *Id.*  Counts VI and VII charge Huffman and Lockhart with conspiring to launder money in violation of 18 U.S.C. § 1956(h).

Manning was arraigned on the Superseding Indictment on August 17, 2012, and pled not guilty to all charges.  *See* D.E. 26.  Lockhart was arraigned on August 28, 2012, and pled not guilty to all charges.  *See* D.E. 33.  On September 26, 2012, the Court conducted a telephonic status conference with counsel for the United States and both Defendants.  *See* D.E. 56.  During the conference call, counsel for Defendants made an oral motion to continue the trial date (then set for October 15, 2012) and to declare this case as complex.  *Id.*  The United States joined in both motions.  *Id.*  Based upon the representations of the United States and defense counsel that discovery in this matter is both complex and voluminous, the Court granted both motions, and set a new trial date of April 22, 2013.  *Id.*; D.E. 61.  The Court also ordered that all defensive motions be filed by January 14, 2013.  D.E. 61 at 5.

In accordance with the Court's schedule, the defendants have filed the instant motions. Manning has moved to dismiss Counts I and II of the Indictment for failing to allege an overt act in furtherance of the charged conspiracies and on the basis of multiplicity.  Lockhart has moved to dismiss Counts I and II for the same reasons, and she has also moved to dismiss Counts IV through VII on the basis of multiplicity.  In addition, Lockhart has moved to dismiss Counts VI and VII for failing to charge an offense.  Finally, Manning has moved for a Bill of Particulars.

## II.      ANALYSIS

Pursuant to Federal Rule of Criminal Procedure 12(b), any party may raise a challenge to the indictment prior to trial.  Fed. R. Crim. P. 12(b)(2).  Indeed, with limited exceptions, a motion alleging a defect in the indictment *must* be raised before trial.  Fed. R. Crim. P. 12(b)(3)(B).  A sufficient indictment must satisfy both the Fifth Amendment to the Constitution, which requires presentment or indictment of a Grand Jury, and the Sixth Amendment, which requires that a defendant be informed of the nature of the charges against him.  *See* U.S. Const., Amends. V, VI.  "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  *Hamling v. United States*, 418 U.S. 87, 117 (1974).

### A.  *Dismissal of Counts I and II for Failure to Allege an Overt Act in Furtherance of the Conspiracy*

Defendants Manning and Lockhart have moved to dismiss Counts I and II for failure to allege an overt act in furtherance of the charged conspiracies.  *See* D.E. 39; 58.  Counts I and II charge James Ronald Huffman, Beverly Lockhart, and Thad Ray Manning with "conspir[ing] with each other and others, with the intent to defraud and mislead, to knowingly sell, purchase or trade prescription drug samples, in violation of 21 U.S.C. §§ 331(t), 353(c)(1), and 333(b)(1)(B)

and 18 U.S.C. § 371." D.E. 8 at 2-3. Count I charges a conspiracy from in or about June 2007 through July 2011, whereas Count II charges a conspiracy from in or about August 2011 through February 2012. *Id.*

"An indictment must set forth each element of the crime that it charges." *Almendarez-Torres v. United States*, 523 U.S. 224, 229 (1998). *See also United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 176 (6th Cir. 1992) (quoting *Hamling*, 418 U.S. at 117) (stating that, to be constitutionally valid, an indictment must "contain[] the elements of the offense charged and fairly inform[] a defendant of the charge against which he must defend. . ."). In particular, a conspiracy indictment must "embrace[] the essential elements of the conspiracy charged, adequately apprise[] the defendant of the charges so that the defendant may intelligently prepare his or her defense and provide[] protection against future prosecutions." *United States v. Craft*, 105 F.3d 1123, 1127 (6th Cir. 1997) (citing *Sandroff v. United States*, 158 F.2d 623, 624-25 (6th Cir. 1946)). In addition to setting forth the essential elements of the crime charged, "the indictment must assert facts which in law constitute an offense; and which, if proved, would establish prima facie the defendant's commission of that crime." *Superior Growers Supply, Inc.*, 982 F.2d at 177. In reviewing the Indictment, the Court must "accept the factual allegations as true, and construe those allegations in a practical sense with all of the necessary implications." *United States v. Reed*, 77 F.3d 139, 140 n.1 (6th Cir. 1996) (en banc). Indeed, "a defendant wishing to challenge an indictment valid on its face bears a heavy burden." *United States v. Woodman*, 229 F.3d 1155, No. 98-4527, 2000 WL 1234328, at *5 (6th Cir. Aug. 21, 2000) (unpublished table decision) (citing *United States v. Lamoureux*, 711 F.2d 745, 747 (6th Cir. 1983)).

The Sixth Circuit has consistently held that an overt act is an essential element of a conspiracy under 18 U.S.C. § 371. The essential elements of a § 371 conspiracy are:

> (1) that the conspiracy described in the indictment was willfully formed, and was existing at or about the time alleged; (2) that the accused willfully became a member of the conspiracy; (3) *that one of the conspirators thereafter knowingly committed at least one of the overt acts charged in the indictment*, at or about the time and place alleged; and (4) that such overt act was knowingly done in furtherance of some object or purpose of the conspiracy as charged.

*United States v. Sturman*, 951 F.2d 1466, 1474 (6th Cir. 1991) (quoting *United States v. Meyers*, 646 F.2d 1142, 1143-44 (6th Cir. 1981)) (emphasis added). *See also United States v. Miller*, 161 F.3d 977, 985 (6th Cir. 1998); *United States v. Jowers*, 125 F.3d 856, 1997 WL 539692, at *2 (6th Cir. Aug. 29, 1997) (Table).

As an essential element of a § 371 conspiracy, an overt act must be set forth in the Indictment. Manning correctly cites to *United States v. Dempsey*, 733 F.2d 392 (6th Cir. 1984), in which the court noted:

> There is no doubt that an indictment under the general federal conspiracy statute, 18 U.S.C. § 371, is defective if it fails to charge an overt act since § 371 requires that "one or more of such persons [the conspirators] do any act to effect the object of the conspiracy . . . ." The overt act is clearly an element of the offense.

*United States v. Dempsey*, 733 F.2d 392, 394-95 (6th Cir. 1984).[2]

Defendants argue Counts I and II do not sufficiently allege an overt act in furtherance of the conspiracy to sell, purchase, or trade prescription drug samples. The Court agrees. In *Sandroff v. United States*, 174 F.2d 1014 (6th Cir. 1949), the court approved defining an overt act as follows:

> An overt act which completes the crime of conspiracy to violate federal law is something apart from the conspiracy itself and is an act to effect the object of the conspiracy, and need not necessarily be a criminal act, nor a crime that is the

---

[2]  In *Dempsey*, the court distinguished the general federal conspiracy statute, 18 U.S.C. § 371, which *does* require the Government to prove an overt act, from the drug conspiracy statute, 18 U.S.C. § 846, which *does not* require proof of an overt act. *Id.*

object of the conspiracy, but must accompany or follow the agreement and must
be done in furtherance of the object of the agreement.

*Sandroff*, 174 F.2d at 1018.  Although the overt act must further the illegal conspiracy, it need

not be illegal itself.  *United States v. Jerkins*, 871 F.2d 598, 602-03 (6th Cir. 1989); *United States

v. Reifsteck*, 841 F.2d 701, 704 (6th Cir. 1988); *Braverman v. United States*, 317 U.S. 49, 53

(1942).  Thus, Manning's argument that the Indictment fails to set forth an overt act because

giving away drug samples is not illegal (D.E. 39-1 at 3-5)  is unavailing.  Nevertheless, nowhere

in the Indictment does the Government set forth facts that could be an overt act, legal or illegal,

in furtherance of the charged conspiracies to sell, purchase, or trade prescription drug samples.

The United States argues, in response to Manning's Motion to Dismiss, that an overt act

is alleged in paragraph 2 of the Indictment, which states that "Huffman and Manning had an

agreement where Manning would allow Huffman to have almost unlimited access to drug

samples provided to Manning by drug sales representatives."  D.E. 47 at 1-2.  As Lockhart notes,

an agreement is merely an agreement.  An overt act, by virtue of its definition, "***must accompany

or follow the agreement***."  *Sandroff*, 174 F.2d at 1018 (emphasis added).  In *United States v.

Wieschenberg*, 604 F.2d 326 (5th Cir. 1979), the court rejected the contention that mere

discussions about a potential illegal objective are sufficient to satisfy the elements of a

conspiracy.  *United States v. Wieschenberg*, 604 F.2d 326, 336 (5th Cir. 1979).  The court stated:

> To embrace the government's contention we must hold that mere association of
> two or more persons to accomplish legal and possibly illegal goals, accompanied
> by discussions to promote those goals, but with no discernable direction toward
> either the legal or the illegal objectives, amounts to criminal conduct under 18
> U.S.C. s 371.  Our authorities cannot be correctly interpreted as supporting such a
> result.  Conviction of a criminal conspiracy must be supported by proof beyond a
> reasonable doubt of an agreement to accomplish an illegal act ***and an overt act in
> furtherance of that agreement's particular illegal purpose.***

*Id.* (emphasis added).  Because the overt act must be in addition to, or follow, an agreement, the overt act cannot be the agreement itself.  *See United States v. Anderson*, 842 F.2d 428, 435 (7th Cir. 1976) ("***In addition to an agreement*** of two or more persons to combine their efforts to achieve an illegal purpose, 'an overt act by one person in furtherance of the agreement' is necessary.") (quoting *United States v. Reynolds*, 511 F.2d 603, 607 (5th Cir. 1975)).

The United States claims that a logical reading of the Indictment suggests that the defendants executed the agreement by transferring drug samples from Manning's office to the pharmacy where they were sold, purchased, or traded, resulting in the large overages described in Paragraph 1 of the Indictment.  *Id.* at 3.  However, nowhere in the Indictment are any factual allegations that the defendants executed the agreement by performing such acts.   Neither Defendants nor the jury should be forced to speculate as to the meaning of the allegations in the Indictment.

The United States then argues, in response to Lockhart's Motion to Dismiss, that an overt act need not be alleged in order for the Indictment to be sufficient, and that the importance of alleging an overt act is limited to establishing whether prosecution for the conspiracy is prohibited by the statute of limitations.  D.E. 69 at 2.  This theory is in direct opposition to the court's reasoning in *Dempsey*, where it noted, "There is no doubt that an indictment under the general federal conspiracy statute, 18 U.S.C. § 371, is defective if it fails to charge an overt act." *Dempsey*, 733 F.2d at 394-95.

Because Counts I and II of the Indictment fail to sufficiently allege an overt act in furtherance of the charged conspiracies to sell, purchase, or trade drug samples, the undersigned recommends that Manning's and Lockhart's Motions to Dismiss Counts I and II be granted.[3]

---

[3]   Although not discussed in the briefs, the Court notes that such dismissal should be *without prejudice*, as "[d]ismissal of an indictment prior to trial simply does not raise any double

7

### B.  *Motion to Dismiss Based on Multiplicity*

Manning and Lockhart also challenge various Counts as multiplicitous.  Both Defendants have moved to dismiss Counts I and II.  D.E. 39-1 at 5-6; D.E. 58-1 at 9-10.  Lockhart has also moved to dismiss Counts IV, V, VI and VII.  D.E. 58-1 at 9-10.

Each count challenged by Defendants charges a conspiracy, but Counts I and II charge conspiracy to sell, purchase, or trade prescription drug samples; Counts IV and V charge conspiracy to commit health care fraud; and Counts VI and VII charge conspiracy to commit money laundering.  D.E. 8.  Each of these pairings of charges is subdivided into two counts, the first count based upon the time period from June 2007 through July 2011, and the second based upon the period from August 2011 to February 2012.  *See id.*  Thus, Counts I, IV, and VI cover the first period, and Counts II, V, and VII cover the second period.

Defendants claim the Indictment charges each offense twice, exposing them to double jeopardy.  Paragraph 1 of the Indictment alleges: "James Ronald Huffman was the pharmacist in charge at 'Marrowbone Clinic Pharmacy' [MCP] in Pike County until the end of July 2011.  Huffman then opened 'Marrowbone Hometown Pharmacy' [MHP] nearby.  Beverly Lockhart was the pharmacy manager in both locations."  D.E. 8 at 1.  The United States claims that two counts were required for each offense because of the change in business entities and the relationship among the parties.  D.E. 47 at 4; D.E. 69 at 4-5.  The Government states, "There was a factual 'break' at the end of July of 2011.  Not only was there a new entity involved, but a new location, new inventory, new financial management system and a new relationship between

---

jeopardy issues and does not bar subsequent prosecution for criminal acts described in that indictment under the doctrine of *res judicata*."  *United States v. Pi*, 174 F.3d 745, 748 (6th Cir. 1999); *see also United States v. Blair*, 215 F.3d 690, 701 (6th Cir. 2000) ("It is well established that dismissal of an indictment prior to trial does not raise a double jeopardy issue and does not bar subsequent prosecution for the offenses described in the indictment.") (citing *Pi*, 174 F.3d at 748).

Huffman and Manning where Huffman paid the rent for Manning as Huffman's part of the 'deal' for the access to the sample medications."  D.E. 69 at 5.

Whether an indictment is multiplicitous is a legal question.  *United States v. Swafford*, 512 F.3d 833, 844 (6th Cir. 2008).  "'Multiplicity' is charging a single offense in more than one count in an indictment."  *Id.* (quoting *United States v. Lemons*, 941 F.2d 309, 317 (5th Cir. 1991)).  "Multiplicity may result in a defendant being punished twice for the same crime, or may unfairly suggest that more than one crime has been committed."  *Id.* (citations omitted).  The general rule for determining whether an indictment is multiplicitous is based upon the test set forth in *Blockburger v. United States*, 284 U.S. 299 (1932):

> To determine if multiplicity exists, a court must first look to "whether Congress intended to punish each statutory violation separately."  Where this enquiry does not resolve the issue, "the general test for compliance with the double jeopardy clause looks to 'whether *each* provision requires proof of a fact which the other does not.'"  Using the same evidence to prove violations of two statutes does not violate *Blockburger*.  But in examining whether the elements overlap the *Blockburger* analysis does require us to "go further and look to the legal theory of the case or the elements of the specific criminal cause of action for which the defendant was convicted without examining the facts in detail."

*Id.*

However, the Sixth Circuit has also recognized inherent difficulty in applying the *Blockburger* analysis to conspiracy charges:

> The government, in a criminal conspiracy case, is often presented with a host of co-conspirators and a multiplicity of overt acts.  An overzealous prosecutor, in drafting the indictment, could choose certain overt acts in one indictment and a different set of overt acts in a second indictment, thereby carving up one conspiracy into two or even more artificial offenses.  However, such a dissection would circumvent a charge of double jeopardy, since each set of overt acts would require different evidence.

*United States v. Sinito*, 723 F.2d 1250, 1256 (6th Cir. 1984).

As a result, the test for whether the Government can prosecute more than one conspiracy centers upon whether there is more than one agreement. *Id.* To determine whether more than one agreement exists, the Sixth Circuit applies a totality of the circumstances test, originally set forth in *United States v. Jabara*, 644 F.2d 574 (6th Cir. 1981). The test considers five factors:

> 1) time; 2) persons acting as co-conspirators; 3) the statutory offenses charged in the indictments; 4) the overt acts charged by the government or any other description of the offenses charged which indicates the nature and scope of the activity in which the government sought to punish in each case; and 5) places where the events alleged as part of the conspiracy took place.

*Sinito*, 723 F.2d at 1256.

The Government contends that the separate counts with respect to each offense are based upon a change in location and a change in the relationship between the parties, and it alludes to a change in the way the conspiracies were carried out (for example, the Government claims that the proof will differ between acts taken at the former and new pharmacies). D.E. 47 at 4; D.E. 69 at 4-5. These factors weigh in favor of finding more than one agreement. However, the statutory offenses are identical for each pairing of charges—Counts I and II (sale, purchase or trade of drug samples), IV and V (health care fraud), and VI and VII (money laundering)—and the allegations in the Indictment involve the same co-conspirators. The alleged conspiracies occurred very close in time (with a month or less between the closing of the old pharmacy and the opening of the new pharmacy), and, although the locations of the pharmacies differ, both were located in Pike County, in the Eastern District of Kentucky.

The totality of the circumstances appear to weigh in favor of finding one agreement, which supports Defendants' argument that the Indictment is multiplicitous. Whether the charges should be dismissed, however, is a different matter, and the Court finds that dismissal is not warranted at this juncture. The Government "has broad discretion in bringing criminal cases,"

and the Court has authority "to defer to the government's discretion to conduct the prosecution . . . upon multiplicitous counts, recognizing that the court could merge the convictions after the jury verdicts are recorded." *United States v. Throneburg*, 921 F.2d 654, 657 (6th Cir. 1990); *see also United States v. McCafferty*, No. 11-3845, 2012 WL 1970777, at *8 (6th Cir. 2012) ("The Supreme Court has instructed that the proper remedy for multipicitous counts may include allowing the jury to consider all counts that are reasonably supported by the evidence and addressing any multiple-punishment issues at sentencing by merging overlapping convictions.") (citing *Ball v. United States*, 470 U.S. 856, 864-65 (1985)).  In *United States v. York*, 59 F.3d 172, No. 94-3655, 1995 WL 369319 (6th Cir. 1995), the Sixth Circuit explained:

> An indictment that is multiplicitous is not fatal and does not require dismissal. The defendant may move to have the prosecution elect among the multiplicitous counts, with all but the one elected dismissed.  This is a matter for trial court discretion, and is most appropriate when the mere making of the charges would prejudice the defendant with the jury.  The principal danger in multiplicity—that the defendant will be given multiple sentences for the same offense—can be remedied at any time by merging the convictions and permitting only a single sentence.

*United States v. York*, 59 F.3d 172, No. 94-3655, 1995 WL 369319, at *2 (6th Cir. 1995) (unpublished table decision) (quoting *United States v. Reed*, 639 F.2d 896, 904 n.6 (6th Cir. 1981)).

The Court does not find that the "mere making" of separate pairs of conspiracy counts based upon the change in pharmacies is prejudicial.  Defendants do not point to any prejudice other than the risk of "double punishment," which can be remedied at trial or sentencing (in the event of conviction).  Therefore, the Court recommends that Manning's Motion to Dismiss Counts I and II and Lockhart's Motion to Dismiss Counts I, II, IV, V, VI, and VII on the basis of multiplicity be denied.

### C.  *Motion to Dismiss Counts VI and VII for Failing to Charge an Offense*

Lockhart has moved to dismiss Counts VI and VII for failing to charge an offense.  D.E. 58-1 at 5-9.  These counts charge Lockhart and Huffman with conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), (a)(1)(B)(i), and (h).  D.E. 8 at 5-9.  Lockhart argues that the Indictment fails to provide sufficient factual detail to allow her to defend the Government's allegations.  *Id.*  The United States, on the other hand, claims the Indictment contains the essential elements of the offenses charged, and that proof at trial, sufficient to support a conviction, is an entirely different matter.  D.E. 69 at 3.

In addition to setting forth the essential elements of the crime charged, "the indictment must assert facts which in law constitute an offense; and which, if proved, would establish prima facie the defendant's commission of that crime."  *Superior Growers Supply, Inc.*, 982 F.2d at 177.  In reviewing the Indictment, the Court must "accept the factual allegations as true, and construe those allegations in a practical sense with all of the necessary implications."  *United States v. Reed*, 77 F.3d 139, 140 n.1 (6th Cir. 1996) (en banc).  Indeed, "a defendant wishing to challenge an indictment valid on its face bears a heavy burden."  *United States v. Woodman*, 229 F.3d 1155, No. 98-4527, 2000 WL 1234328, at *5 (6th Cir. Aug. 21, 2000) (unpublished table decision) (citing *United States v. Lamoureux*, 711 F.2d 745, 747 (6th Cir. 1983)).

Count VI of the Indictment states as follows:

> From in or about June 2007 through July 2011, in Pike County, in the Eastern District of Kentucky, and elsewhere, James Ronald Huffman, Beverly Lockhart, and others, knowing that the property involved in financial transactions affecting interstate commerce represented the proceeds of some form of unlawful activity, did conspire to conduct such financial transactions, which, in fact, involved proceeds of specified unlawful activity, that is, health care fraud, with the intent to promote the carrying on of such specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), and knowing that the transactions were designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of such specified unlawful

activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), all in violation of 18 U.S.C. § 1956(h).

D.E. 8 at 5-6.  Count VII sets forth the same allegations, but is based on the time period from on or about August 2011 through February 2012.  *Id.* at 6.

Paragraph 10 of the Indictment sets forth the factual allegations in support of Counts VI and VII and states:

> James Ronald Huffman, Beverly Lockhart and others obtained health insurance coverage information and would submit claims for payment to those health benefit providers seeking (and obtaining) payment for prescription medications that were never provided to the named insured.  These fraudulently obtained payments were processed through the account(s) of the pharmacy operated by James Ronald Huffman and Beverly Lockhart as if they were properly obtained in the usual course of the business.

*Id.* at 3-4.

The Indictment charges Lockhart (and Huffman) with both promotional and concealment money laundering.  The essential elements of promotional money laundering, prohibited by 18 U.S.C. § 1956(a)(1)(A)(i), are that the defendant: "(1) conducted a financial transaction that involved the proceeds of unlawful activity; (2) knew the property involved was the proceeds of unlawful activity; and (3) intended to promote that unlawful activity."  *United States v. Kelso*, 468 F. App'x 551, 555 (6th Cir. 2012) (citing *United States v. Prince*, 618 F.3d 551, 554 (6th Cir. 2010)).  The elements of concealment money laundering, prohibited by 18 U.S.C. § 1956(a)(1)(B)(i), are: "(1) use of funds that are proceeds of unlawful activity; (2) knowledge that the funds are proceeds of unlawful activity; and (3) conduct or attempt to conduct a financial transaction, knowing that the transaction is designed in whole or in part to disguise the nature, location, source, ownership or control of the proceeds."  *United States v. Prince*, 214 F.3d 740, 747 (6th Cir. 2000) (citing *United States v. Moss*, 9 F.3d 543, 551 (6th Cir. 1993)).

*i. Merger*

In her Motion to Dismiss, Lockhart raises several issues with respect to the money laundering counts.  She first argues that, due to the lack of factual specificity, she cannot determine whether there is a "merger" problem, as described in *United States v. Santos*, 553 U.S. 507 (2008).  D.E. 58-1 at 7.  In *Santos*, the Supreme Court examined whether the term "proceeds" as used in the federal money laundering statute means "receipts" or "profits."  The defendant in *Santos* was found guilty of three money laundering counts, one count of running an illegal gambling business, and one count of conspiring to run an illegal gambling business.  *Id.* at 509-10.  Justice Scalia, joined by Justices Souter, Thomas, and Ginsberg, reasoned that, if the term "proceeds" was interpreted to mean "receipts," the illegal gambling statute would "merge" with the money laundering statute:

> If "proceeds" meant "receipts," nearly every violation of the illegal-lottery statute would also be a violation of the money-laundering statute, because paying a winning bettor is a transaction involving receipts that the defendant intends to promote the carrying on of the lottery.  Since few lotteries, if any, will not pay their winners, the statute criminalizing illegal lotteries, 18 U.S.C. § 1955, would "merge" with the money-laundering statute.

*Id.* at 515-16.  Justice Scalia noted that the "merger" problem was not limited to the illegal gambling statute: "Anyone who pays for the costs of a crime with its proceeds—for example, the felon who uses the stolen money to pay for the rented getaway car—would violate the money-laundering statute."  *Id.*  at 516.

Justice Scalia found that interpreting "proceeds" to mean "profits" eliminated the "merger" problem, as "a criminal who enters into a transaction paying the expenses of his illegal activity cannot possibly violate the money-laundering statute, because by definition profits consist of what remains after expenses are paid."  *Id.*  at 517.  Justice Stevens concurred in the judgment, but wrote separately to express his view that the definition of "proceeds" varies

depending upon the legislative history of the statute applicable to the predicate crime.  *Id.* at 524-28.  Thus, the plurality's decision in *Santos* was limited to holding "that 'proceeds' means 'profits' when there is no legislative history to the contrary."  *Id.* at  523.

Although not addressed by the parties, the Sixth Circuit addressed the meaning and effect of *Santos* in *United States v. Kratt*, 579 F.3d 558, 562 (6th Cir. 2009).  In *Kratt*, the court concluded that, based upon the Supreme Court's ruling in *Santos*, "proceeds" means "profits," "only when the § 1956 predicate offense creates a merger problem that leads to a radical increase in the statutory maximum sentence and only when nothing in the legislative history suggests that Congress intended such an increase."  *United States v. Kratt*, 579 F.3d 558, 562 (6th Cir. 2009).

Lockhart argues that Counts VI and VII potentially create a merger problem similar to that described in *Santos*.  She claims, "If the government is charging that the money laundering transaction is the same one as the payment for the alleged health care fraud, such as an electronic payment from Medicare, then the transaction is not money laundering because the funds are not yet proceeds."  D.E. 58-1 at 7.  If, on the other hand, Lockhart argues, the Government is alleging that the fraudulently obtained payments were received by Defendants in the form of a check or otherwise, and then deposited into the pharmacy account, this is a "receipt and deposit" case that would require, before bringing charges, prior consultation with the Asset Forfeiture and Money Laundering Section of the United States Attorney's Office.  D.E. 58-1 at 7-8.  She cannot tell whether there is a merger problem, she argues, because the government has not listed any financial transactions involving the proceeds of unlawful activity.  D.E. 73 at 4 ("The particular problem here is that the government has not listed any transactions which it believes constituted money laundering.").

Lockhart's arguments are interesting, but prematurely presented.  The Indictment states that the fraudulently obtained payments from health benefit providers "were processed through the account(s) of the pharmacy operated by James Ronald Huffman and Beverly Lockhart as if they were properly obtained in the usual course of the business."  D.E. 8 at 4.  On their face, Counts VI and VII are valid.  They contain each element of the crime of money laundering: they set forth a financial transaction (processing the payments by health benefit providers through the pharmacy account) involving the proceeds of an unlawful activity (health care fraud), and, construing the factual allegations as true and with all practical implications, they allege that the defendants knew the funds were proceeds of the unlawful activity of health care fraud and intended to promote that unlawful activity and disguise the nature, location, source, ownership or control of the proceeds.  While the Court does not doubt that Counts VI and VII could have included more detail, they "contain the elements of the offense charged and fairly inform [Lockhart] of the charges against which [s]he must defend."  *Allen v. United States*, 867 F.2d 969, 971 (6th Cir. 1989).  Using "a common sense construction" as required under the applicable case law, the Court finds that Counts VI and VII adequately inform Lockhart of the money laundering offense.  *Id.*  Notably, without any discussion by the parties of *Kratt*, the legislative history implicated, or whether a "radical increase" in the statutory maximum sentence exists, the undersigned cannot actually apply *Santos.*

This finding, of course, does not preclude Lockhart (or any defendant) from raising a *Santos* argument or challenging the sufficiency of the Government's evidence at trial.  *See United States v. Berger*, No. 09-308, 2010 WL 4237925, at *7 (W.D. Penn. Oct. 21, 2010) (denying a defendant's motion to dismiss the indictment based on *Santos* and noting that "*Santos* was decided in the context of post-trial motions where the Court was examining the sufficiency

of the government's evidence").  However, at this stage, the Court finds that Counts VI and VII are sufficient to inform Lockhart of the charged offenses, and the Government should be allowed to offer its evidence at trial.

### ii. Intent to Promote or Disguise

Lockhart also argues that there are no factual allegations in Counts VI and VII that would support either an intent to promote the unlawful activity or an intent to conceal or disguise the proceeds.  D.E. 58-1 at 8.  In support of her argument, she cites to case law holding that the use of proceeds to purchase personal goods or pay for business expenditures is insufficient to establish an intent to promote or conceal.  *Id.*  However, both cases cited by Lockhart addressed whether the Government's **evidence** was sufficient to support a money laundering **conviction**. Lockhart does not cite to a single case where an Indictment was dismissed on this basis prior to trial.  The United States is entitled to present evidence that proceeds from the alleged unlawful activity were processed in such a way to promote the illegal activity and/or conceal its proceeds. The Ninth Circuit's reasoning in *United States v. Hymes*, 113 F. App'x 755, No. 03-30354, 2004 WL 2420622 (9th Cir. Oct. 14, 2004) is persuasive:

> [The defendant] next contends that the district court erred in denying his motion to dismiss the money laundering counts because the indictment failed to list facts describing attempts to conceal the nature of the proceeds of unlawful activity. The district court did not err in denying the motion to dismiss, because in an indictment the government 'need not allege its theory of the case or supporting evidence.'  In the present case, the money laundering counts in the indictment were legally sufficient because they adequately alleged each of the requisite elements of the offense.

*United States v. Hymes*, 113 F. App'x 755, No. 03-30354, 2004 WL 2420622 at 757 (9th Cir. Oct. 14, 2004) (citations omitted).

Lockhart has not met the heavy burden required to dismiss Counts VI and VII of the Indictment.  The money laundering counts set forth the essential elements of the offense, fairly

inform Lockhart of the charges against which she must defend, and "enable[] [her] to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Superior Growers Supply, Inc.*, 982 F.2d at 176. Therefore, the Court recommends that Lockhart's Motion to Dismiss Counts VI and VII be denied.

### D.  Motion for a Bill of Particulars

Pursuant to Federal Rule of Criminal Procedure 7(f), the Court may direct the Government to file a Bill of Particulars. Fed. R. Crim. P. 7(f). The Motion filed by Manning seeks 10 pieces of information, all of which are related to Counts I and II.[4] Specifically, the Motion requests that the Bill of Particulars provide:

1. The names and addresses of all alleged co-conspirators presently known to the Government at the time of their alleged participation in the alleged conspiracies.

2. Any overt acts not enumerated in the indictment, concerning which acts the Government intends to offer evidence upon the trial of the indictment herein.

3. Any and all over[t] acts defendant Manning engaged in the furtherance of the conspiracies set forth in Counts I and II.

4. Set forth whether the defendants herein sold, traded or purchased prescription drug samples and, if so, identify the drug samples and amounts sold, purchased or traded and to whom.

5. Set forth any and all acts the Government alleges that separate the conspiracies set forth in Counts I and II together with dates and places for said acts.

6. The Government is requested to identify with particularity any and all acts this defendant engaged in with respect to the conspiracy alleged in Count I.

7. The Government is requested to identify with particularity any and all acts this defendant engaged in with respect to the conspiracy alleged in Count II.

8. Set forth with particularity any and all agreements the defendant Manning had with Beverly Lockhart with respect to the conspiracies alleged in Counts I and II.

---

[4]  Manning does not seek any additional information about Count III in his Motion for a Bill of Particulars.

9.   Set forth with particularity an[y] and all acts defendant Manning may have participated in with Beverly Lockhart in furtherance of the conspiracies alleged in Counts I and II.

10.   Set forth with particularity an[y] and all acts that events [sic] defendant Manning's knowledge that Huffman and Lockhart were engaged in criminal conspiracies.

D.E. 41 at 1-2.

Of course, the dismissal of Counts I and II recommended herein would moot Manning's Motion for a Bill of Particulars.  Assuming the Indictment is sufficient, however, the Court considers Manning's Motion for a Bill of Particulars.  D.E. 38.  Manning argues he is entitled to a Bill of Particulars to allow him to adequately prepare a defense, avoid surprise at trial, and avoid being placed in double jeopardy for the same offense.  D.E. 38 at 2.  He claims the Indictment does not specify whether he sold, purchased, or traded prescription drug samples, and does not identify which overt acts he allegedly carried out in furtherance of the charged conspiracy.  *Id.*

"The purposes of a bill of particulars are to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense ***when the indictment itself is too vague, and indefinite for such purposes***."  *United States v. Birmley*, 529 F.2d 103, 108 (6th Cir. 1976) (emphasis added).  Defendants are not entitled to a bill of particulars simply because "the allegations are not as detailed as [they] may prefer."  *United States v. Finn*, 919 F. Supp. 1305, 1326 (D. Minn. 1995).  Indeed, a bill of particulars is "not designed to substitute for pretrial discovery," *id.*, and "it is not to be used to provide detailed disclosure of the government's evidence at trial." *United States v. Wessels*, 12 F.3d 746, 750 (8th Cir. 1993).  Furthermore, "if the information sought by defendant is provided in the indictment or in some acceptable alternate

19

form, no bill of particulars is required." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).

Counts I and II of the Indictment charge a conspiracy to knowingly sell, purchase, or trade prescription drug samples in violation of 21 U.S.C. §§ 331(t), 353(c)(1), and 333(b)(1)(B), all in violation of 18 U.S.C. § 371.  Assuming sufficient pleading of an overt act, the allegations associated with these counts are sufficient to apprise Manning of the charges.  The Indictment specifies the relevant federal statutes, tracks the language of those statutes, specifies the names of the alleged co-conspirators, specifies the approximate location and time period during which the conspiracy is alleged to have occurred, and provides a description of the charged unlawful activity.

Manning argues that, from the face of the Indictment, it is not possible to tell whether he is charged with selling, purchasing, or trading prescription drug samples, any one of which is prohibited by 21 U.S.C. §§ 331(t) and 353(c)(1).  D.E. 38 at 2.  Manning further takes issue with the allegation in the Indictment that Manning agreed to allow Huffman unlimited access to drug samples provided to Manning by drug sales representatives.  *Id.*  He claims "[t]here is no allegation that Manning sold, purchased or traded drug samples to Huffman.  A complete disconnect exists between the statutory prohibitions and Manning's alleged acts thereby taking Manning's acts out of the purview of criminal activity and leaving the defense, at best, to guess at the nature of the charges herein."  *Id.*

To the contrary, the Indictment ***does*** provide a description of the charges – conspiracy to knowingly sell, purchase, or trade prescription drug samples.  The Indictment need not provide a detailed description of which of these three acts – selling, purchasing, or trading – Defendants conspired to do, so long as it provides sufficient information to allow Defendants to prepare a

defense. As Manning notes, either the sale, purchase, or trade of drug samples – or any combination of the three – is prohibited by the enumerated statutes. Manning's actions are not "out[side] of the purview of criminal activity" merely because the Indictment does not specifically state whether he personally sold, purchased, or traded drug samples. As written, the Indictment provides Manning with sufficient information to prepare a defense.

Manning also requests that the Government provide the overt acts taken by Manning in furtherance of the conspiracies set forth in Counts I and II. D.E. 38-1 at 4. "An Indictment must set forth each element of the crime that it charges." *Almendarez-Torres*, 523 U.S. at 229. As such, an Indictment charging a violation of 18 U.S.C. § 371 must charge an overt act because this is an element of the offense. *Dempsey*, 733 F.2d at 394-95. Thus, Manning is correct that the Indictment must allege ***an*** overt act in furtherance of the conspiracies charged in Counts I and II. Assuming, however, that the Indictment does allege an overt act, the Government need not provide each and every overt act taken by Manning. Indeed, § 371 requires only that ***one or more*** conspirators do ***any*** act to effect the object of the conspiracy. 18 U.S.C. § 371.

Manning also seeks the identities of any unnamed co-conspirators. D.E. 38. However, "the Government is not required to furnish the name of all other co-conspirators in a bill of particulars." *United States v. Crayton*, 357 F.3d 560, 568 (6th Cir. 2004). "As long as the indictment is valid, contains the elements of the offense, and gives notice to the defendant of the charges against him, it is not essential that a conspirator know all other conspirators." *United States v. Rey*, 923 F.2d 1217, 1222 (6th Cir. 1991).

The Court finds that the allegations in the Indictment "inform the defendant of the nature of the charge[s] against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, and to enable him to plead his acquittal or

conviction in bar of another prosecution for the same offense." *Birmley*, 529 F.2d at 108.  While the Indictment could have included more detail of the charged offenses, a desire for more detail, by itself, is insufficient to obtain a bill of particulars, *Finn*, 919 F. Supp. at 1326, and the Government is not required to aid a defendant by providing detailed disclosure of the evidence it plans to introduce at trial, *Wessels*, 12 F.3d at 750.

Manning's Motion for a Bill of Particulars (D.E. 38) is denied**.**

### III.    CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** as follows:

1.    Defendant Manning's Motion to Dismiss (D.E. 39) be, in part, **GRANTED** as to Counts I and II, and therefore Counts I and II of the Superseding Indictment (D.E. 8) be **DISMISSED WITHOUT PREJUDICE** for failing to allege an overt act in furtherance of the charged conspiracy.

2.    Defendant Manning's Motion to Dismiss Counts I and II on the basis of multiplicity (D.E. 39) be **DENIED**.

3.    Defendant Lockhart's Motion to Dismiss (D.E. 58) be, in part, **GRANTED** as to Counts I and II, and therefore Counts I and II of the Superseding Indictment (D.E. 8) be **DISMISSED WITHOUT PREJUDICE** for failing to allege an overt act in furtherance of the charged conspiracy.

4.    Defendant Lockhart's Motion to Dismiss Counts VI and VII for failure to state an offense (D.E. 58) be **DENIED**.

5.    Defendant Lockhart's Motion to Dismiss Counts I, II, IV, V, VI, and VII on the basis of multiplicity (D.E. 58) be **DENIED**.

The Court also **ORDERS** that Defendant Manning's Motion for a Bill of Particulars (D.E. 38) is **DENIED.**

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning the recommendations above, issued under subsection (B) of that statute.   As defined by section 636(b)(1) and Federal Rule of Criminal Procedure 59(b), within fourteen days after being served with a copy of this Recommended Disposition, any party may serve and file written objections to any or all portions for de novo consideration by the District Court.   The parties should consult the aforementioned statute and rule for specific appeal rights and mechanics.   Failure to object in accordance with Rule 59(b) waives a party's right to review.

This the 29th day of October, 2012.

Signed By:

*Hanly A. Ingram*

United States Magistrate Judge